UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARRYL THOMAS *et al.*,

    *Plaintiffs*,

v.

BANK OF AMERICA *et al*.,

    *Defendants*.

Civil Action No. 21-3242 (TJK)

**MEMORANDUM OPINION**

    Darryl Thomas sued Defendants—a group of banks and loan servicers—in the District of Columbia Superior Court on behalf of himself and his wife's estate, for allegedly fraudulently pursuing foreclosure of his property. He argues that Defendants conspired to misrepresent the ownership of the property and pursue unlawful foreclosure proceedings in that court. And he seeks an injunction to halt foreclosure of his property and damages for alleged violations of federal loan regulations and other common law torts. Defendants removed the case to this Court. Defendants moved to dismiss, arguing, among other things, that Thomas's claims are precluded by a Superior Court decision in the foreclosure action. Thomas opposed, and moved to remand. For the reasons explained below, the Court agrees that removal was proper and that Thomas's claims are precluded, so it will deny Thomas's motion and grant Defendants' motions on those grounds.

**I.**     **Background**

    Thomas, suing on behalf of himself and as a representative of his wife's estate, alleges that Defendants conspired to defraud him and unlawfully foreclose on his property.[1] The alleged

---

[1] The Court refers to both plaintiffs as "Thomas," given the representation that Darryl Thomas is the personal representative of his wife's estate. *See* ECF No. 23 at 8.

scheme is complex, and his 130-page complaint is hard to follow. In short, Thomas claims that after obtaining a loan to buy the property, the lender—Bank of America—conspired with other financial institutions to unlawfully create the "illusion" that title in the property had been transferred to a "nonexistent trust entity." ECF No. 1-4 ¶¶ 9, 14, 16, 18, 43–45. In doing so, Defendants allegedly falsified records and documents, made intentional misrepresentations, and fabricated evidence and testimony. *See, e.g.*, *id.* ¶ 182. Thomas alleges that Defendants did all this to obtain loan payments fraudulently and eventually "weaponize" the foreclosure process to seize his property. *Id.* ¶¶ 8, 15, 80–83. He alleges that the scheme has been referred to as a "securitization fail." *Id.* ¶ 8.

In 2015, U.S. Bank National (which possessed title to the property then through a trust called "Truman"), initiated foreclosure proceedings in Superior Court after Thomas supposedly failed to make required loan payments. *See* ECF No. 1-5 at 15. Thomas filed various counterclaims based on the same facts he alleges here—mainly, that U.S. Bank National was part of a conspiracy to unlawfully seize his property because Defendants misrepresented that title had been transferred to entities other than the original lender. *Id.* at 18–21. In 2018, a judge in Superior Court entered an Order and Decree of Sale in favor of U.S. Bank National, which approved the foreclosure and rejected all of Thomas's counterclaims. *Id.* at 22. Thomas's subsequent bankruptcy filings and the COVID-19 foreclosure moratorium—which have both since concluded—then halted any sale of his property.

In December 2021, Thomas sued prior and current title owners—Bank of America and its subsidiary Bank of America Funding Corporation, U.S. Bank National, J.P. Morgan Mortgage Acquisition Corporation, and U.S. Bank Trust National Association—and prior and current loan servicers—Rushmore Loan Management Services and Fay Servicing—in Superior Court. He

sought to enjoin the foreclosure judgment and obtain damages related to violations of various lending laws. Defendants removed the case to this Court and moved to dismiss, arguing that the Thomas's claims are barred by claim preclusion and that he failed to state a claim. ECF Nos. 3, 8, 9, 10. Thomas opposed and moved to remand. ECF Nos. 18, 23.

## II.     Legal Standards

"A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)). "When a plaintiff files a motion to remand, the removing defendant bears the burden of proving that removal was proper." *Arenivar v. Manganaro Midatlantic*, *LLC*, 317 F. Supp. 3d 362, 367 (D.D.C. 2018) (internal quotation marks omitted). In resolving a motion to remand, the Court may consider "evidence outside the pleadings." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept all of the factual allegations in [the] complaint as true." *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (quoting *United States v. Gaubert*, 499 U.S. 315, 327 (1991)). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But the Court need not accept legal conclusions as true. *Id.* at 679. The Court may consider the pleadings and any attachments to the motion referenced in the complaint and central to the plaintiff's claims. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1133 (D.C. Cir. 2015); *Scott v. Dist. Hosp. Partners, LP*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014). Claim preclusion may serve as the basis for a motion to dismiss "when the defense appears on the facts of the complaint and any material of which the court may take judicial notice."

*Sheppard v. District of Columbia*, 791 F.Supp.2d 1, 5 n.3 (D.D.C. 2011). The Court may take judicial notice of public records from other proceedings. *See Covad Comms. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).

**III.    Analysis**

    **1.    Plaintiffs' Motion to Remand**

Thomas argues for remand because this case is "not a securities case nor a securitization challenge" and that his claims fundamentally arise out of state law. ECF No. 18 at 2. Defendants say that removal was proper under 28 U.S.C. § 1441 and argue that the Court has two bases for subject-matter jurisdiction: diversity jurisdiction and federal-question jurisdiction. *See* ECF Nos. 19, 20, 21. They also argue that if the Court exercises its federal-question jurisdiction, it may exercise supplemental jurisdiction over Thomas's state law claims because they arise from the same facts and do not present novel or complex issues of law. *See id.* Defendants are right.

First, the Court has diversity jurisdiction over this action. The diversity statute requires that all plaintiffs are diverse from all defendants and that the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Defendants argue that Thomas and his wife's estate are diverse from all Defendants and that the amount-in-controversy requirement is satisfied. *See, e.g.*, ECF No. 19 at 4–5. Thomas does not dispute the amount in controversy but appears to argue that the Court lacks diversity jurisdiction because the alleged conspiracy occurred within the District of Columbia. ECF No. 18 at 4. But even if true, the location of the alleged conspiracy—while potentially relevant to a venue or personal jurisdiction analysis—does not affect the Court's diversity jurisdiction. Defendants argue that they are each citizens of states other than the District of Columbia (where Thomas and his wife's estate

4

appear to be citizens) and Thomas makes no argument to the contrary. *See* ECF Nos. 18, 19, 20, 21. The Court is therefore satisfied that the requirements of § 1332 are met.

Second, in the alternative, the Court may also exercise federal-question jurisdiction over Thomas's federal claims and supplemental jurisdiction over any state law claims. District courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To determine whether federal question jurisdiction exists, courts apply the 'well-pleaded complaint rule,' which 'provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Inst. for Truth in Mktg. v. Total Health Network Corp.*, 321 F. Supp. 3d 76, 82 (D.D.C. 2018) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Many of Thomas's twelve counts arise directly under federal law. For example, Count VIII seeks relief for alleged violations of the Consumer Financial Protection Act, 12 U.S.C. § 5531 *et seq*. *See* ECF No. 1-4 ¶¶ 366–398. Thomas also alleges that Defendants violated other federal laws, including the Fair Debt Collection Practices Act (Count IX), the Real Estate Settlement Procedures Act (Count X), the Truth in Lending Act (Count XI), and the Homeowners Protection Act (Count XII). *See, e.g.*, *id.* ¶¶ 406, 437, 468, 499. Thomas even repeats throughout the complaint that "the Court has subject-matter jurisdiction over this action because it is brought under Federal consumer financial law, 12 U.S.C. § 5565(a)(1) [which] presents a federal question, 28 U.S.C. § 1331, et seq." *See, e.g.*, *id.* ¶ 286, 399, 430, 461. For these reasons, federal-question jurisdiction is clear where, as here, "plaintiff's statement of his own cause of action shows that it is based upon federal law." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009).

In addition, the Court may exercise supplemental jurisdiction over Thomas's state law claims because both the "state and federal claims 'derive from a common nucleus of operative fact

. . . and are such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding.'" *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 75 (D.D.C. 2002) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)), *aff'd*, 409 F.3d 414 (D.C. Cir. 2005). This would be so whether a plaintiff sued in federal court or the case was removed under § 1441. *See Busby v. Capital One, N.A.*, 759 F. Supp. 2d 81, 83–84 (D.D.C. 2011) (citing *City of Chicago v. Int'l College of Surgeons*, 552 U.S. 156, 164–165 (1997)). Thomas's state law claims—several common law torts—are all based on the same facts as his federal law claims. In short, because the claims stem from the same alleged conspiracy, the Court can exercise supplemental jurisdiction.

Thomas also argues that the Court should remand the case because his state law claims present "novel and complex" issues. ECF No. 18 at 7. There is no basis for the Court to do so. To begin, that doctrine applies when a court relies on federal-question and supplemental jurisdiction, *see Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 416 (D.C. Cir. 2014), but the Court here has diversity jurisdiction as well. Moreover, that doctrine applies only when a court dismisses federal claims first and must then address lingering state law claims. *See, e.g.*, *Edmonson & Gallagher v. Alban Towers Tenants Assoc.*, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995). And finally, Thomas fails to plausibly explain why his common law claims of "interference in contractual relations," "gross negligence," and "negligence" present "unsettled issues of state law" requiring remand. *See Araya*, 775 F.3d at 417. For these reasons, the Court will deny Thomas's motion to remand.

### 2.   Defendants' Motions to Dismiss

Defendants move to dismiss on several grounds. They argue that the Superior Court foreclosure judgment bars Thomas's claims in this suit and that Thomas otherwise fails to state a claim

for relief. Thomas argues that his claims are not precluded because some defendants in this case were not parties to the foreclosure action and because he only recently "discovered" certain facts related to the alleged conspiracy. ECF No. 23 at 3. As with the motion to remand, Defendants have the better argument.

Courts "apply the preclusion law of the court in which the first proceeding was brought, and when this is a state court, the state's law of preclusion applies." *Jahr v. District of Columbia*, 968 F. Supp. 2d 186, 190 (D.D.C. 2013) (citing *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481–482 (1982)).[2] Here, the first proceeding—the foreclosure action—was litigated in Superior Court, so District of Columbia preclusion law applies. Under District of Columbia law, "the doctrine of res judicata (claim preclusion) dictates that a final judgment on the merits of a claim bars relitigation in a subsequent proceeding of the same claim between the same parties or their privies." *Bell v. First Investors Servicing Corp.*, 256 A.3d 246, 253 (D.C. 2021) (cleaned up). Claim preclusion "operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised." *Patton v. Klein*, 746 A.2d 866, 870 (D.C. 1999). And "[i]f there is a common nucleus of facts, then the actions arise out of the same cause of action." *Faulkner v. GEICO*, 618 A.2d 181, 183 (D.C. 1992). As explained below, each of the elements of claim preclusion under District of Columbia law described above are met here.

### A. The Superior Court Order and Decree of Sale Was a Final Judgment on the Merits

In the Superior Court foreclosure action, Thomas raised several counterclaims asserting

---

[2] Although the Court decides Defendants' motions on claim preclusion grounds, it notes that Thomas's claims appear precluded or otherwise defective as a matter of law for multiple other reasons that it need not reach.

that U.S. Bank National, the loan owner, could not proceed with foreclosure because the trust entity purportedly holding title to Thomas's property was a fictitious entity created as part of a conspiracy. The Superior Court order dismissed Thomas's counterclaims and granted U.S. Bank National summary judgment, allowing it to proceed with foreclosure and sale of the property. *See* ECF No. 3-9.[3] As far as the Court can tell, Thomas does not challenge that the Superior Court judgment resolved his counterclaims on the merits and is a final judgment for purposes of claim preclusion.

### B.     The Relevant Parties Are in Privity

Defendants are each in privity with U.S. Bank National, the plaintiff in the Superior Court foreclosure case. "Privity has been described as a mutual or successive relationship to the same right of property, or such an identification of interest of one person with another as to represent the same legal right." *Carr v. Rose*, 701 A.2d 1065, 1075 (D.C. 1997) (cleaned up). "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case." *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989). In the real property context, the "term privity denotes a mutual or successive relationship to the same right of property." *Washington v. H.G. Smithy, Co.*, 769 A.2d 134, 139 (D.C. 2001) (quoting *Usher v. 1015 N Street, N.W., Co-op Ass'n*, 120 A.2d 921, 922 (D.C. 1956).

Successive owners of the same mortgage or property loan are typically in privity with one another. *See, e.g.*, *Walsh v. Bank of Am. NA*, 113 F. Supp. 3d 108, 115 (D.D.C. 2015); *Johnson v. Chase Manhattan Mortg. Corp.*, No. 04-cv-344 (EGS), 2006 WL 2506598, at *4 (D.D.C. Aug. 28, 2006). Thus, Bank of America, Bank of America Funding Corporation, J.P. Morgan Acquisition

---

[3] For purposes of claim preclusion under District of Columbia law, "[i]t is immaterial that the relevant claim was adjudicated as a counterclaim" in the prior action "and is raised as the basis of a plaintiff suit here." *Smith v. Jenkins*, 562 A.2d 610, 615 (1989).

Corporation, and U.S. Bank Trust National Association—prior or current lenders and owners of Thomas's property—are in privity with U.S. Bank National, the plaintiff in the Superior Court foreclosure action and then-owner of the mortgage. Likewise, in mortgage disputes, property owners and lenders are in privity with loan servicers on the same loan. *See Mushala v. U.S. Bank, Nat'l Ass'n*, No. 18-cv-1680 (JDB), 2019 WL 1429523, at *7 n.8 (D.D.C. Mar. 29, 2019). Thus, Rushmore Loan Management Services and Fay Servicing—the past and current loan servicers—are also in privity with U.S. Bank National as well.[4] Again, Thomas raises no colorable argument to the contrary.

### C. Thomas's Claims in this Case Are Identical to His Counterclaims in the Superior Court Case or Could have Been Brought in that Case

Many of Thomas's claims here are identical to his counterclaims in the Superior Court foreclosure action. For example, in both actions he raises claims under the Fair Debt Collection Practices Act, Real Estate Settlement Procedures Act, and common law theories of slander of title, breach of contract, and other torts. *See, e.g.*, ECF No. 1-4 ¶¶ 252, 285, 306, 325, 347, 388, 397–427; ECF No. 3-7 at 8, 17–19; ECF No. 3-9. And importantly, any new claims or theories of liability Thomas brings in this suit could have been brought as counterclaims in the foreclosure action because they arise from the same alleged conspiracy. *See Faulkner*, 618 A.2d at 183 ("The nature and scope of a cause of action is determined by the factual nucleus, not the theory on which a plaintiff relies." (cleaned up)). And under District of Columbia law, any claims that could have

---

[4] In addition, Thomas and his wife's estate are—respectively—the same as or in privity with Thomas, who brought the counterclaim in the foreclosure action. Thomas explains that he is "the Personal Representative of the estate and is authorized to sue on behalf of the estate." ECF No. 23 at 8. It appears then that Thomas is the "successor in interest" to his wife's estate, which the District of Columbia Court of Appeals has described as one of the "orthodox categories of privies." *Modiri v. 1342 Restaurant Grp.*, 904 A.2d 391, 396 (D.C. 2006) (cleaned up).

been brought in the foreclosure action are subject to claim preclusion as well. *See Patton*, 746 A.2d at 869.

Thomas argues that he could not have brought certain claims in the foreclosure proceeding—thus rendering claim preclusion inapplicable—because of newly "discovered" evidence that has only been "recently acquired." ECF No. 23 at 3. More darkly, he says that he recently discovered facts about the conspiracy that Defendants "actively concealed." ECF No. 22 ¶ 8. But these conclusory allegations do not change the Court's analysis.

In general, "newly discovered" facts do not prevent a prior judgment from having preclusive effect. *See Wallace v. Skadden, Arps, Slate, Meagher & Flom*, 715 A.2d 873, 887 (D.C. 1998) ("[N]ewly discovered evidence normally does not preclude the application of res judicata."). That said, claim preclusion may not apply if the plaintiff could not have discovered certain facts through "due diligence." *Id.* Thomas does not come close to successfully invoking this exception to the usual rule. He does not identify any new fact that he recently discovered,[5] explain why—with due diligence—he could not have discovered it before the Superior Court litigation concluded, or identify any specific claim he seeks to bring now that he could not have then.[6]

At bottom, Thomas's counterclaims in Superior Court alleged the same foreclosure conspiracy and many of the same claims that Thomas attempts to relitigate now, and there is no reason to believe any of his new claims could not have been brought then. Thus, the prior judgment in

---

[5] To the contrary, his forensic auditor's report about the alleged fraud states that "[m]y prior analysis and opinions"—prepared in a May 2017 report predating the Superior Court order—"remain unchanged." ECF No. 1-5 at 67.

[6] Thomas could have anticipated making a claim about Defendants' alleged misrepresentation in the prior litigation because, in fact, he made such a claim. *Wallace*, 715 A.2d at 887; *see* ECF No. 1-5 at 19–20 (Superior Court explaining that Thomas "has not proffered . . . a scintilla of evidence" for his claim that "misrepresentation occurred.").

the foreclosure action has claim preclusive effect on this case and creates "an absolute bar to relitigating that cause of action." *Colvin v. Howard Univ.*, 257 A.3d 474, 481 (D.C. 2021). For these reasons, the Court will grant Defendants' motions to dismiss.[7]

## IV. Conclusion

For all these reasons, the Court will deny Thomas's motion to remand and grant Defendants' motions to dismiss. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 9, 2022

---

[7] J.P. Morgan Mortgage Acquisition Corporation, U.S. Bank Trust National Association, and Rushmore Loan Management Services also move for sanctions against Thomas and his attorney, Craig A. Butler, arguing that the suit was filed for improper purposes and that the motion to remand was without legal basis. ECF No. 29. The Court has discretion to determine whether Rule 11 has been violated and whether sanctions are appropriate. *See Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002). The Court is troubled that this suit alleges the same conspiracy and the same legal theories that the Superior Court rejected in the foreclosure action, and by Thomas's attorney's fundamental misunderstanding of federal court jurisdiction. That said, "the imposition of Rule 11 sanctions is not something courts take lightly" and is an "an extreme punishment." *Intelsat USA Sales LLC v. Juch-Tech, Inc.*, 305 F.R.D. 3, 6 (D.D.C. 2014) (cleaned up). Given that the Court will dismiss the case and that Defendants do not seek any particular sanction, in its discretion the Court declines to impose sanctions under Rule 11. *See Shive-Ayala v. Pacelle*, No. 21-cv-704 (RJL), 2022 WL 782412, at *5 n.2 (D.D.C. Mar. 15, 2022). But the Court cautions Thomas's attorney that similar conduct in the future might well expose him or his client to such sanctions.